UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

DONALD NEGRO,

          Plaintiff,

v.

LANDER COUNTY, a political subdivision of the State of Nevada; KEITH WESTENGARD, an individual,

          Defendants.

Case No. 3:17-cv-00044-LRH-VPC

ORDER

    Defendants Lander County ("County") and Keith Westengard ("Westengard") (collectively "defendants") move for summary judgment in this civil rights action. ECF No. 26. Plaintiff Donald Negro opposed the motion, and defendants replied. ECF Nos. 29, 32. The court now grants the motion, finding Negro offers insufficient competent evidence for his claims.

**I.    BACKGROUND**

    This civil rights action arises from Negro's employment with the County in the Public Works Department. ECF No. 1. In October 2009, Negro accepted an at-will position with the County as the Road and Bridge North foreman. ECF No. 26, Ex. 2. The County simultaneously employed the following individuals who are relevant to this decision: (1) Bert Ramos, the Road and Bridge South foreman; (2) Jake Edgar, the Water and Sewer Department foreman; and, (3) Gene Etcheverry, the County Executive Director from 2009 to 2014. ECF No. 26, Exs. 3–4. Keith Westengard was later appointed as the County Safety Manager in 2012 and then replaced Etcheverry as the County Executive Director in 2014. *Id.*

1

Immediately after Negro accepted the Road and Bridge North foreman position in 2009, he began to engage in work-related conflict with Edgar, the Water and Sewer Department foreman. ECF No. 26 at 4; ECF No. 29 at 2–5. Negro attributes the conflict to his reports of Edgar mishandling County funds, improperly awarding County contracts to friends and family members, and mismanaging the Water and Sewer Department. ECF No. 26, Ex. 19; ECF No. 29 at 2–5. But defendants attribute the conflict to Negro attempting to supervise Edgar without any authority to do so and to the two men disagreeing on the proper allocation of County equipment and personnel. ECF No. 26 at 4. Regardless of the reasoning for the conflict, it disrupted the workplace. ECF No. 26, Exs. 3–4. Etcheverry, the County Executive Director, warned the men multiple times that their behavior could result in the termination of their employment. ECF No. 26, Ex. 3.

The two men continued to conflict over the next several years, continuing after Westengard replaced Etcheverry as the County Executive Director in 2014. ECF No. 26, Ex. 4; ECF No. 29 at 3–4. Edgar filed an internal complaint in 2015, alleging that Negro's actions constituted harassment. ECF No. 26, Ex. 22. Westengard hired an independent investigator to investigate Edgar's complaint. ECF No. 26, Exs. 4, 7. The investigator concluded that "there is a severe personality conflict" between the two men "and the conflict has escalated to a point of Edgar and Negro basically refusing to work with each other and communicate with each other." ECF No. 26, Ex. 7. The investigator went on to conclude that Negro's conduct toward Edgar did not amount to harassment as defined under local, state and federal law. *Id.* The investigation also led to the County's realization that Edgar's management choices were in fact creating project delays and costing the County more money than necessary. *Id.* As a result, Edgar was terminated as the Water and Sewer Department foreman in August 2015. ECF No. 26, Ex. 4. Negro and Ramos both applied for Edgar's position. *Id.* At the time, Ramos was the Road and Bridge South foreman. *Id.* To Negro's dismay, the position was awarded to Ramos. *Id.* Ramos later became Negro's supervisor due to a restructuring of the Public Works Department. *Id.* Conflicts arose and continued between Ramos and Negro throughout their tenure together through 2015. *See* ECF No. 26, Ex. 12.

In addition to conflicting with Edgar and then Ramos, Negro caused other issues for the Public Works Department. He conflicted with other coworkers, including Westengard and Samuel Griffith. ECF No. 26 at 4–7; ECF No. 26, Exs. 4, 12, 13; ECF No. 29 at 3–7; ECF No. 29, Exs. 2–3. He was also reprimanded twice in February 2015, first for failing to attend a County Commissioner's Meeting without notice and then for improperly terminating an employee in February 2015. ECF No. 26, Exs. 5–6. Two months later, he was reprimanded for making derogatory remarks towards supervisors. ECF No. 26, Ex. 9. Negro contends that none of the reprimands had merit. ECF Nos. 29 at 4–5; ECF No. 29, Ex. 3.

In July 2015, Negro was placed on a performance improvement plan by Ramos. ECF No. 26, Ex. 11. During the follow-up evaluation in January 2016, Ramos rated Negro below average in nine of fourteen categories. ECF No. 26, Ex. 14. Westengard terminated Negro's employment the following day, citing disruption of the workplace and disruption of production as bases for the decision. ECF No. 26, Ex. 15. The County Commissioners thereafter ratified the decision to terminate Negro's employment. ECF No. 26, Ex. 17; *see also* ECF No. 26, Exs. 16, 18.

In February 2016, Judie Allen—Negro's significant other—had a conversation with the County's District Attorney, Ted Hererra, who told her that Negro was fired because he "couldn't keep his mouth shut." ECF No. 29, Ex. 2. Allen recorded the conversation unbeknown to Herrera. ECF No. 29, Ex. 1 at 63–64, 199–200. In July 2016, Allen also had a conversation with Westengard, who told her that all Negro had to do to keep his job was to "stop stirring the pot." ECF No. 29, Ex. 2.

Negro sues defendants, alleging claims for retaliation under the First Amendment to the Constitution, tortious discharge, intentional infliction of emotional distress, and negligence. ECF No. 1. Defendants now move for summary judgment on all claims. ECF No. 26.

**II.     LEGAL STANDARD**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary

judgment, the evidence and all reasonably drawn inferences must be read in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party "bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 987, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). On those issues for which it bears the burden of proof, the moving party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.*

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which show a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

**III. DISCUSSION**

Defendants move for summary judgment on each of Negro's four claims: (1) retaliation under the First Amendment to the Constitution; (2) tortious discharge; (3) intentional infliction of emotional distress; and (4) negligent selection, retention, training, and supervision. Because Negro "withdraws" his negligence claim, ECF No. 29 at 2, the court dismisses it accordingly. The court addresses the three reaming claims below after first resolving an evidentiary dispute.

///

///

4

**A. Evidentiary Issues**

To begin, the court decides whether to exclude the statements contained in Negro's supporting exhibits under the hearsay rule. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible. Fed. R. Evid. 801(c); Fed. R. Evid. 802. But certain categories of out-of-court statements are not considered hearsay. Fed. R. Evid. 801(d). One such category is an opposing party's admission. Fed. R. Evid. 801(d)(2). Party admissions include statements made "by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]" Fed. R. Evid. 801(d)(2)(D). Here, Negro offers two statements that cause the court concern under Rule 801.

First, Negro offers Westengard's statement to Negro's significant other, Julie Allen, in July 2016 that "all [Negro] had to do was to do his job and stop stirring the pot" in order to keep his job. Westengard's statement is admissible as a party admission, because he made the statement while employed as the County Executive Director and the statement concerned a matter within the scope of Westengard's employment. The court will therefore consider Westengard's statement in its analysis below.

Second, Negro offers County District Attorney Ted Herrera's statement in a conversation with Allen that Negro was terminated because he "couldn't keep his mouth shut." Negro contends that the statement is admissible under two bases: (1) the then-state-of-mind exception to the hearsay rule and (2) as a party admission. Both bases fail.

Negro cannot rely on the state-of-mind exception to the hearsay rule because it requires the statement to be made contemporaneous to the then-existing state of mind. Fed. R. Evid. 803(3) (allowing a statement of the declarant's then-existing state of mind to show motive, intent, or plan); *see also United States v. Faust*, 850 F.2d 575, 585 (9th Cir. 1988) (instructing courts to consider the contemporaneity of a statement offered under the state-of-mind exception to the hearsay rule). The statement was not made by a person involved in the decision to terminate Negro's employment, *e.g.*, Westengard or a County Commissioner. Further, Negro

failed to depose Herrera.[1] As a result, he has not provided the court any evidence of the basis of, reason for, or meaning of Herrera's comment. The failure to depose Herrera regarding the statement leaves Negro in the position of offering nothing more than speculation. The court therefore finds that the statement lacks probative value as to the then-existing state of mind of a person responsible for terminating Negro's employment. Additionally, it appears that the main purpose for the statement is to prove the truth of the matter asserted rather than the state of mind of a decision maker.

Negro also cannot rely on the exception for party admissions. While Herrera serves as the County's District Attorney, Negro has not clarified how a statement relating to the termination of an employee in the Public Works Department relates to the scope of the district attorney's position. Again, there is no evidence before the court suggesting the basis or reason for Herrera's comment and there is no evidence that Herrera was involved in any way with Negro's termination. Negro merely offers the conclusory statement that Herrera would be consulted on County personnel matters without showing that he was involved. Thus, the court will not consider Herrera's statement for purposes of this summary judgment motion.

### B. Retaliation under the First Amendment to the United States Constitution

The court now turns to Negro's claim for retaliation in violation of the First Amendment to the Constitution.[2] The First Amendment protects "public employees from employment retaliation for their protected speech activities." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012). But courts must "arrive at a balance between the interests of the public employee, as a citizen, in commenting upon matters of public concern and the interest of the [government employer], as an employer, in promoting the efficiency of the public services it

---

[1] Negro failed to conduct any discovery in this matter. He did not depose Herrera or any County employees—including those taking part in the decision to terminate his employment. He did not propound any interrogatories, requests for admission, or requests for production. *See* ECF No. 26 at 3 (uncontested allegation that "[Negro] conducted absolutely no discovery in this case. He took no depositions and propounded no discovery.").

[2] Defendants briefly argue that the applicable statute of limitations bars Negro's retaliation claim, because Negro began making his reports shortly after he was hired in 2009. But Negro's claim did not accrue until he was terminated in 2016. He sued defendants in 2017. Thus, he filed suit within the two-year statute of limitations cited by defendants. *See Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (holding that the statute of limitations begins to run on the date that the plaintiff's claim "accrues").

performs through its employees." *Id.* (internal quotation marks omitted). Courts use a five-factor analysis to achieve that balance:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the [government employer] had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the [government employer] would have taken the adverse employment action even absent the protected speech.

*Desrochers*, 572 F.3d at 708–09; *see also Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 822 (9th Cir. 2017) (applying the five-factor analysis). Each factor is necessary for a retaliation claim, meaning "the failure to meet any one of them is fatal to the plaintiff's case." *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1260 (9th Cir. 2016). The plaintiff must demonstrate the first three factors to establish a prima facie claim. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012).

If an employee can establish a prima facie claim, the burden shifts to the employer to demonstrate satisfaction of either the balancing test under *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968) or the mixed-motive analysis under *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). The *Pickering* balancing test inquires if the employer had legitimate administrative interests that outweighed the employee's First Amendment rights. *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004). The *Mount Healthy* mixed-motive analysis inquires if the employer would have reached the same decision even in the absence of an employee's protected conduct. *Id.*

The court grants summary judgment in favor of defendants on Negro's First Amendment retaliation claim because Negro fails to establish a prima facie case. Negro fails to establish a prima facie case because his subject speech was all spoken within the confines of county management operations and was purely focused upon performance within the Public Works Department. While his comments involved matters which would be of public concern, his comments solely relate to issues within the Public Works Department and Negro's observations

7

and opinions gained within his employment capacity. He was clearly speaking as an employee when his comments were made.

Negro also does not offer more than a mere scintilla of evidence in regards to whether his complaints concerning his coemployee Edgar were a substantial or motivating factor in the termination of his employment. A plaintiff may show that a genuine issue of material fact exists as to this factor by providing evidence of his employer's knowledge about the plaintiff's speech and of one of the following three circumstances: (1) the protected action and the retaliatory employment decision were proximate in time; (2) the employer opposed the speech to the plaintiff or to others; or (3) the employer gave false or pretextual explanations for the adverse employment action. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1045 (9th Cir. 2017).

On the evidence before the court, Negro does not demonstrate any circumstances that would allow for his claim to survive summary judgment. As for proximity, the protected action and the alleged retaliatory decision in this matter were not proximate in time. Anywhere from one year to five years passed between Negro's complaints about Edgar and defendants' decision to terminate Negro.

Additionally, Negro cannot show that defendants opposed his speech. While he attempts to offer Westengard's statement that Negro continued "stirring the pot" as evidence that defendants opposed his speech, this mere scintilla of evidence does not suffice. There is no evidence of what Westengard meant by his words: "all [Negro] had to do was to do his job and stop stirring the pot in order to keep his job". Significantly, the comment is so broad and general that it is too vague to be of consequence. Negro failed to conduct any discovery on the issue. He did not depose Westengard; he did not depose Herrera; he did not depose any of the County Commissioners or any County employees. Besides this single, vague statement from Westengard six months after Westengard terminated Negro, Negro does not offer any evidence to support his assertion that defendants opposed his speech.

Negro also offers no evidence that defendants terminated him based on false or pretextual reasons. Again, he did not depose any knowledgeable person on this matter. He offers no evidence showing a reasonable inference of either false or pretextual reasons for his employment

termination. Thus, considering Negro's evidence in its most favorable light, the court finds that a reasonable jury could not find that Negro's criticisms were a motivating factor in the decision to terminate his employment.

But even if Negro had established a prima facie case for his claim, the court would still grant summary judgment in favor of defendants because defendants have satisfied both the *Pickering* balancing test and the *Mount Healthy* mixed-motive analysis. When applying the *Pickering* balancing test, "courts must give government employers wide discretion and control over the management of their personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 979 (9th Cir. 1998) (internal punctuation and citations omitted). The *Pickering* balancing test, in fact, "favors the employer if the employee's conduct impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the employee's duties or interferes with the regular operation of the enterprise." *Nichols v. Dancer*, 657 F.3d 929, 933 (9th Cir. 2011) (internal punctuation and citations omitted).

The *Pickering* balancing test favors defendants because defendants provide strong evidence that Negro disrupted the workplace and underperformed in his position. The defense evidence shows that Negro created turmoil and disruption with multiple supervisors and coworkers: Edgar, Etcheverry, Ramos, Westengard, and Griffith. They also show inferior performance by Negro as a supervisor in missing a required meeting and improperly terminating the employment of lower-level staff. They also present evidence that Negro was given the opportunity to keep his position through a performance improvement plan. And, after having six months to address his shortcomings, Negro failed to improve in a majority of the outlined deficiencies.

Likewise, defendants satisfy the *Mount Healthy* mixed-motive analysis. Under *Mount Healthy*, the public employer must "[show] by a preponderance of the evidence that it would have reached the same decision as to [the employment decision] even in the absence of the

protected conduct." *Mt. Healthy*, 429 U.S. at 287. Defendants demonstrate good cause for Negro's discharge by establishing his continual struggle to maintain professional relationships with coworkers and supervisors. In the face of defendants' evidence, Negro offers nothing more than personal disagreement and his significant other's (Allen) one-page declaration, which lacks detail concerning the context, circumstances, and other significant information related to Westengard's broad and general comment about "stirring the pot." Thus, the court grants summary judgment on the First Amendment retaliation claim in favor of defendants.

### C. Tortious Discharge

In his second claim, Negro asserts a cause of action for tortious discharge. "An at-will employee may generally be properly discharged without cause at the will of the employer" under Nevada law." *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009). But liability arises when "an employer commits a tortious discharge by terminating an employee for reasons which violate public policy." *Id.* (citing *D'Angelo v. Gardner*, 819 P.3d 206, 212 (Nev. 1991)). While a claim for tortious discharge serves to remedy employer retaliation for employee's acts that are consistent with public policy, Nevada law requires dismissal of the claim if "an adequate, comprehensive, statutory remedy" exists. *Id.* (dismissing the claim because an alternative remedy existed under the Railway Labor Act); *see also Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989) (dismissing the claim because the Age Discrimination Employment Act provided an independent avenue for recovery). Here, if the evidence before the court supported Negro's retaliation claim, he would have a complete remedy and a claim for the tortious discharge he claims here. His tortious discharge claim is therefore unavailable under Nevada state law.

Additionally, Negro again relies solely on Westengard's "stirring the pot" statement to support his claim for tortious discharge. Again, the bare statement with no evidence concerning its meaning or basis offers no more than a scintilla of evidence. Negro offers no competent evidence to support the assertion that he was terminated for reasons that would violate public policy. Conversely, defendants present compelling evidence of Negro's inability to maintain professional working relationships as well as underperformance in his position. Thus, the court grants summary judgment in favor of defendants on Negro's tortious discharge claim.

**D. Intentional Infliction of Emotional Distress**

In his third claim, Negro asserts intentional infliction of emotional distress. The claim has three elements under Nevada law:

> (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.

*Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.3d 882, 886 (Nev. 1999) (citation omitted). The tort is "recognizable in the employment termination context." *Id.* "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Kahn v. Morse & Mowbray*, 117 P.3d 227, 237 n.18 (Nev. 2005) (citing California Book of Approved Jury Instructions). But "persons must necessarily be expected and required to be hardened ... to occasional acts that are definitely inconsiderate and unkind." *Id.*

Again, Negro provides no credible evidence for this claim. No evidence is offered to show Westengard or the County Commissioners terminated his employment with the requisite reckless disregard or any intent of causing emotional distress. Meanwhile, defendants present multiple affidavits and exhibits indicating their reasoning for terminating Negro's employment was neither reckless nor intended to inflict emotional distress. The court therefore grants summary judgment in favor of defendants on Negro's claim for intentional infliction of emotional distress.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that plaintiff's claim for negligent selection, retention, training and supervising (claim four) is **DISMISSED.**

*///*
*///*
*///*
*///*
*///*
*///*

IT IS FURTHER ORDERED that defendants' motion for summary judgment (ECF No. 26) is **GRANTED.** The court instructs the clerk of the court to enter judgment for defendants on claims one (retaliation), two (tortious discharge), and three (intentional infliction of emotional distress) and to close this matter accordingly.

IT IS SO ORDERED.

DATED this 13th day of July, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE